515-15    516-15

COURT OF CRIMINAL APPEALS

**ORIGINAL**

FILED IN
COURT OF CRIMINAL APPEALS

JUL 10 2015

Abel Acosta, Clerk

STATE OF TEXAS

V.

MORRIS S. JONES, PETITIONER

ON DISCRETIONARY REVIEW FROM
NOS. 05-13-01558-CR, 05-13-01559-CR
FIFTH COURT OF APPEALS, DALLAS

ON APPEAL FROM NOS. F12-62862-J AND F13-00351-J
CRIMINAL DISTRICT COURT NO. 3, DALLAS COUNTY

PETITION FOR DISCRETIONARY REVIEW

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 08 2015

Abel Acosta, Clerk

MORRIS JONES #1894912
P.O. BOX 9000
HENDERSON, TX 75653
PRO SE - PETITION

MICHAEL MOWLA
445 E. FM 1382 #3-718
CEDAR HILL, TX 75104
PHONE: 972-795-2401
FAX: 972-692-6636
MICHAEL@MOWLALAW.COM
TEXAS BAR NO. 24048680
ATTORNEY THAT FILED APPEAL

NO ORAL ARGUMENT REQUESTED

# I. IDENTITY OF PARTIES, COUNSEL AND JUDGES

MORRIS JONES, APPELLEE AND PRO SE ON DISCRETIONARY REVIEW

MICHAEL MOWLA, ATTORNEY FOR APPELLEE ON APPEAL
445 E. FM 1382 #3-718, CEDAR HILL, TX 75104 (972) 795-2401
FAX 972-692-6636, EMAIL MICHAEL@MOWLALAW.COM

SCOTTIE ALLEN, ATTORNEY FOR APPELLANT AT TRIAL, 41414 N. CENTRAL EXPRESSWAY,
SUITE 650, DALLAS, TX 75204 (214) 824-7711

LYSETTE RIOS, ATTORNEY FOR APPELLANT AT TRIAL, 14785 PRESTON RD. SUITE 550
DALLAS, TX 75254 PHONE 469-269-0511

FAITH JOHNSON, ATTORNEY FOR DEFENDANT JOHN JONES AT TRIAL, 5201 O'CONNOR
BLVD. SUITE 500, IRVING, TX 75039 (972) 401-3100

LISA FOX, ATTORNEY FOR DEFENDANT JOHN JONES AT TRIAL 6565 N. MCARTHUR
BLVD. SUITE 225, IRVING TEXAS 75039 (972) 432-1095

CRAIG WATKINS, DALLAS COUNTY DISTRICT ATTORNEY, ATTORNEY FOR STATE OF
TEXAS 133 N. RIVERFRONT BLVD. LB 19 DALLAS, TEXAS 75207-4399
214-653-3600 FAX 214-653-3643

MICHAEL CASILLAS, DALLAS COUNTY ASSISTANT DISTRICT ATTORNEY, ATTORNEY
FOR STATE OF TEXAS 133 N. RIVERFRONT BLVD. LB 19 DALLAS, TEXAS 75207-
4399 (214) 653-3600 FAX 214-653-3643

LISA SMITH, DALLAS COUNTY ASSISTANT DISTRICT ATTORNEY, ATTORNEY FOR
STATE OF TEXAS 133 N. RIVERFRONT BLVD. LB 19 DALLAS TEXAS 75207
4399 (214) 653-3600 FAX 214-653-3643 LISA.SMITH@DALLASCOUNTY.ORG

ANDREW NOVAK, DALLAS COUNTY ASSISTANT DISTRICT ATTORNEY, ATTORNEY FOR

STATE OF TEXAS (AT TIME OF TRIAL) 133 N. RIVERFRONT BLVD. LB 19 DALLAS TEXAS 75207-4399 214-653-3600 FAX 214-653-3643

DEWEY MITCHELL, DALLAS COUNTY ASSISTANT DISTRICT ATTORNEY, ATTORNEY FOR STATE OF TEXAS, 133 N. RIVERFRONT BLVD. LB.19 DALLAS, TEXAS 75207-4399 (214) 653-3600 FAX 214 653-3643

HON. GRACIE LEWIS, PRESIDING JUDGE OF CRIMINAL DISTRICT COURT NO. 3, 133 N. RIVERFRONT BLVD. DALLAS, TEXAS 75207-4399 214-653-5830

# II. TABLE OF CONTENTS

I. IDENTITY OF PARTIES, COUNSELS AND JUDGES .................. 2

II. TABLE OF CONTENTS .................. 4

III. TABLE OF AUTHORITIES .................. 6

IV. APPENDIX INDEX .................. 7

V. STATEMENT REGARDING ORAL ARGUMENT .................. 8

VI. STATEMENT OF THE CASE AND PROCEDURAL HISTORY .................. 9

VII. GROUND FOR REVIEW .................. 10

VIII. ARGUMENT .................. 11

I. GROUND FOR REVIEW:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ALLOWED STATE WITNESS RANDALL THOMPSON TO TESTIFY AS AN EXPERT WITNESS. THOMPSON WAS NOT LISTED AS AN EXPERT WITNESS PRIOR TO TRIAL. FURTHERMORE THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ALLOWED STATE EXPERT RANDALL THOMPSON TO TESTIFY WHILE REFERENCING DOCUMENTS THAT WERE TENDERED TO APPELLANTS TRIAL COUNSEL EIGHT DAYS AFTER THE START OF TRIAL.

AS A RESULT, (1) THE DECISION OF THE COURT OF APPEALS CONFLICTS WITH ANOTHER COURT OF APPEALS' DECISION ON THE SAME ISSUE; (2) THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE OR FEDERAL LAW THAT HAS NOT BEEN, BUT SHOULD BE, SETTLED BY THE COURT OF CRIMINAL APPEALS; (3) THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE OR FEDERAL LAW IN A WAY THAT CONFLICTS WITH THE APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS AND THE SUPREME COURT OF THE UNITED STATES; (4) THE COURT OF APPEALS MISCONSTRUED A RULE; AND (5) THE

JUSTICES OF THE COURT OF APPEALS HAVE DISAGREED ON A MATERIAL QUESTION
OF LAW NECESSARY TO THE COURTS DECISION. SEE TEX. RULE APP. PROC. 66.3 (2015)

IX. CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . 16

X. CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . 17

# III. TABLE OF AUTHORITIES

## CASES

Barnes v. State 876 S.W. 2d 316 (Tex. Crim. App. 1994) ... 12,13

Barnhill v. State 779 S.W. 2d 890 (Tex. App. Corpus Christi 1990) ... 10,14

Duff-Smith v. State 685 S.W. 2d 26 (Tex. Crim. App. 1985) ... 12

Hendley v. State 783 S.W. 2d 750 (Tex. App. Houston [1st Dist] 1990 ... 10,14

Hernandez v. State 791 S.W. 2d 301 (Tex App. Corpus Christi 1990, Pet. Ref.) ... 10,14

Hollowell v. State 571 S.W. 2d 179 (Tex. Crim. App. 1978) ... 13

Lindley v. State 635 S.W. 2d 541 (Tex. Crim. App. 1982) ... 12,13

Martinez v. State 653 S.W. 2d 630 (Tex. App. San Antonio 1983, Pet Ref.) ... 12

Montgomery v. State 810 S.W. 2d 372 (Tex. Crim. App. 1991) ... 12

Moore v. State 493 S.W. 2d 233 (Tex. Crim. App. 1973) ... 10,14

Oprean v. State 201 SW 3d 724 (Tex. Crim. App. 2006) ... 13

Sanders v. State No. 05-12-01186-CR, 2014 Tex. App. Lexis 4430 (Tex. App. Dallas, April 23, 2014 ... 12

Tamez v. State 205 SW 3d 32 31 (Tex App. Tyler 2006, No Pet.) ... 11,12,13

## RULES

Tex. Code Crim. Proc. Art. 38.14 (2012) ... 11

Tex. Code Crim. Proc. Art. 38.14 (B) 2013 ... 11,12,13

Tex. Rule App. Proc. 39.7 (2014) ... 8

Tex. Rule App. Proc. 66.3 (2015) ... 5,16

Tex. Rule App. Proc. 9.5 (2014) ... 17

Tex. Rule Evid. 404 (2014) ... 13

Tex. Rule Evid. 614 (2014) ... 10,14

Tex. Rule Evid. 701 (2014) ... 10

## CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. V ... 14

U.S. Const. Amend. VI ... 14

## II. APPENDIX INDEX

PETITIONER, PRO SE, IS INCARCERATION THUS HAS NO ACCESS TO A COPY OF ANY OPINION OF THE COURT OF APPEALS.

STATE V. JONES 05-13-01558, 05-13-01559

## V. STATEMENT REGARDING ORAL ARGUMENT

APPELLANT DOES NOT REQUEST ORAL ARGUMENT. SEE TEX. RULE APP. PROC. 39.7 (2014). APPELLANT BELIEVES THAT THE FACTS AND LEGAL ARGUMENTS ARE ADEQUATELY PRESENTED IN THIS PETITION. HOWEVER, SHOULD THIS COURT DETERMINE THAT ITS DECISIONAL PROCESS WILL BE SIGNIFICANTLY AIDED BY ORAL ARGUMENT, APPELLANT WILL BE HAPPY TO PRESENT ORAL ARGUMENT.

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

APPELLEE MORRIS S. JONES RESPECTFULLY SUBMITS THIS PETITION FOR DISCRETIONARY REVIEW:

## III. STATEMENT OF THE CASE AND PROCEDURAL HISTORY

THIS PETITION FOR DISCRETIONARY REVIEW REQUESTS THAT THIS COURT REVIEW THE JUDGEMENT AND OPINION OF THE FIFTH COURT OF APPEALS IN STATE V. JONES 05-13-01558-CR, 05-13-01559-CR. THE PETITIONER WAS CONVICTED BY A JURY OF THE OFFENSE OF AGGRAVATED ROBBERY WITH A DEADLY WEAPON. BOTH ARISE OUT OF THE SAME FACTS AND TRIAL. TO THE ALLEGATIONS PETITIONER PLEADED "NOT GUILTY." (RR 11, 30) THE PUNISHMENT WAS ASSESSED BY THE JURY AT TWO FIFTEEN (15) YEAR SENTENCES TO THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE. THE SENTENCES WERE ORDERED TO RUN CONCURRENTLY.

ON OCTOBER 24, 2013 PETITIONER FILED TIMELY NOTICES OF APPEAL IN BOTH CASES. THE CONVICTION WAS AFFIRMED BY THE COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS AT DALLAS ON APRIL 7, 2015. NO MOTION FOR REHEARING WAS FILED BY PETITIONER AND THE DECISION BECAME FINAL. THIS PETITION WAS THEN FILED WITH THE CLERK OF THE COURT OF APPEALS WITHIN SPECIFIED (90) DAYS AFTER SUCH FINAL RULING, TO WIT ON JUNE 30, 2015; GIVEN A EXTENTION BY SAID COURT.

## VII. GROUND FOR REVIEW

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ALLOWED STATE WITNESS RANDALL THOMPSON TO TESTIFY AS AN EXPERT WITNESS. THOMPSON WAS NOT LISTED AS AN EXPERT WITNESS BEFORE THE TRIAL BEGAN NOR WAS HE LISTED AS A POSSIBLE EXPERT WITNESS; UNTIL AFTER THE FIRST DAY OF TRIAL BEGAN. (1) MONTHS BEFORE TRIAL ON MAY 23, 2013, THE TRIAL COURT ORDERED DISCLOSURES OF ALL DISCOVERY REGARDING EXPERTS; (2) THE STATE FAILED TO PROVIDE THE INFORMATION REQUIRED BY THE TRIAL COURT'S DISCOVERY ORDER UNTIL AFTER TRIAL COMMENCED AND (3) THE REMEDY FOR THE VIOLATION OF DISCOVERY ORDERS REGARDING THE FAILURE TO DISCLOSE EXPERTS OR EXPERT DOCUMENTS SHOULD BE THE DENIAL OF THE RIGHT TO PRESENT THE EVIDENCE, AND (4) THE PARTY CHALLENGING THE EVIDENCE SHOULD NOT BE REQUIRED TO FILE A MOTION FOR CONTINUANCE DURING TRIAL.

ACCORDING TO TEXAS RULES OF EVIDENCE 701: IF A WITNESS IS NOT TESTIFYING AS AN EXPERT, TESTIMONY IN THE FORM OF AN OPINION IS LIMITED TO ONE THAT IS: (A) RATIONALLY BASED ON THE WITNESS'S PERCEPTION; AND (B) HELPFUL TO CLEARLY UNDERSTANDING THE WITNESS'S TESTIMONY OR TO DETERMINING A FACT IN ISSUE. EXPERT WITNESSES ARE DIFFERENT TYPES OF WITNESSES THAN LAY WITNESSES. FIRST, EXPERT WITNESSES ARE EXEMPTED FROM WITNESS RULE PROVIDED THE PROPONENT OF THE EXPERT SHOWS THE EXPERT'S PRESENCE IS SHOWN TO BE ESSENTIAL TO THE PRESENTATION OF THE PROPONENTS CASE. SEE TEX. RULE EVID. 614(3) (2014); MOORE V. STATE 493 S.W. 2D 844, 845 (TEX CRIM. APP. 1973); HERNANDEZ V. STATE, 791 S.W. 2D 301, 306 (TEX. APP. CORPUS CHRISTI 1990, PET. REF); HENDLEY V. STATE, 783 S.W. 2D 750, 752 (TEX. APP. HOUSTON [1ST DIST] 1990); BARNHILL V. STATE, 779 SW 2D 890, 892-893 (TEX APP. CORPUS CHRISTI 1990). NO SIMILIAR PROVISION EXISTS FOR OTHER PERSONS OTHER THAN THE PARTIES, OFFICERS OR EMPLOYEES OF A CORPORATION, OR THE "VICTIM" IN A CRIMINAL CASE IN CERTAIN CIRCUMSTANCES. TEX. RULE EVID. 614 (2014)

FURTHERMORE THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT ALLOWED STATE EXPERT RANDALL THOMPSON TO TESTIFY WHILE REFERENCING DOCUMENTS THAT WERE TENDERED TO APPELLANTS TRIAL COUNSEL EIGHT DAYS AFTER TRIAL BEGAN.

## VIII. ARGUMENT

1. DURING A PRETRIAL HEARING ON MAY 23, 2013, THE TRIAL COURT ORDERED THE STATE TO PROVIDE APPELLANTS COUNSEL A WRITTEN NOTICE OF EXPERTS. (RR 3, 28). AND ON SEPTEMBER 20, 2013, IN OPEN COURT, THE STATE STATED: "...IN THAT LIST OF DISCOVERY AND IN MY EXPERT LIST, I TOLD YOU ABOUT ALL MY EXPERTS." (RR 5, 8).

THE STATE MADE THE CURIOUS COMMENT THAT THOMPSON IS A "FACT WITNESS WITH REGARDS TO CELL PHONE TOWERS, THEIR LOCATIONS, THINGS LIKE THAT." ID. THIS WAS DESPITE THE FACT THOMPSON IS LISTED AS AN EXPERT IN AN AMENDED NOTICE OF EXPERTS ON OCTOBER 7, 2013, THE DAY THAT VOIR DIRE BEGAN, AND THE DAY THE STATE RECEIVED THE DOCUMENTS THAT THE STATE DID NOT BOTHER TURNING OVER TO APPELLANT'S TRIAL COUNSEL. (RR 7; CR-1558, 80; CR-1559, 35). THE TRIAL COURT DENIED APPELLANT'S MOTION. RESEARCH GATHERED AFTER TRIAL REVEAL THOMPSON AS A CUSTOMER SERVICE REP, NOT A EXPERT ON CELL PHONE TOWERS. DURING TRIAL, THOMPSON PROVIDED DETAILED EXPERT TESTIMONY REGARDING PHONE CALLS RECEIVED OR TRANSMITTED BY VARIOUS CELL PHONE TOWERS THROUGHOUT DALLAS AND ARLINGTON. OVER APPELLANT'S OBJECTION, THOMPSON EVEN ANSWERED A LONG SERIES OF HYPOTHETICAL QUESTIONS, JUST AS AN EXPERT WOULD. (RR 16, 42-49)

APPELLANT'S COUNSEL PROPERLY OBJECTED TO EXPERT TESTIMONY AS WELL AS TO THE DOCUMENTS TENDERED EIGHT DAYS AFTER THE START OF TRIAL. APPELLANT COMPLAINS THAT THE STATE FAILED TO GIVE APPROPRIATE NOTICE OF ANTICIPATED EXPERT WITNESS. (SEE TAMEZ V. STATE 205 SW 3D 32, 39 (TEX. APP. TYLER 2006) APPELLANT DID OBJECT TO THE EXPERT TESTIMONY OFFERED BY THOMPSON - A CUSTOMER SERVICE REP. NOT A ENGINEER NOR TOWER SPECIALIST. 39.14 (B) TEXAS CODE OF CRIMINAL PROCEDURE REQUIRES THE STATE TO DISCLOSE PRIOR TO TRIAL, THE NAME AND ADDRESS OF ANY EXPERT WITNESS IT INTENDS TO CALL. THE RECORD DOES SHOW THAT THE COURT ORDERED DISCLOSURE IN PREVIOUS PRETRIAL HEARINGS. APPELLANT WAS WITHOUT NOTICE THAT THOMPSON WOULD BE AN EXPERT WITNESS OR TESTIFY AS SUCH BECAUSE HE WAS NOT LISTED AS SUCH PRIOR TO TRIAL.

2. STANDARD OF REVIEW IS ABUSE OF DISCRETION

WHEN REVIEWING A TRIAL COURT'S DECISION TO ADMIT OR EXCLUDE EVIDENCE, A REVIEWING COURT MUST DETERMINE WHETHER THE TRIAL

COURT'S DECISION WAS AN ABUSE OF DISCRETION. MARTINEZ V. STATE, 867 SW.2D 30, 39 (TEX. CRIM. APP. 1993). UNLESS THE TRIAL COURTS DECISION WAS OUTSIDE THE "ZONE OF REASONABLE DISAGREEMENT," A REVIEWING COURT SHOULD UPHOLD THE RULING. MONTGOMERY V. STATE, 810 SW.2D 372, 391 (TEX. CRIM. APP. 1991)

3. THE REMEDY FOR THE VIOLATION OF DISCOVERY ORDERS REGARDING THE FAILURE TO DISCLOSE EXPERTS OR EXPERT DOCUMENTS SHOULD BE THE DENIAL OF THE RIGHT TO PRESENT THE EVIDENCE, AND THE PARTY CHALLENGING THE EVIDENCE SHOULD NOT BE REQUIRED TO FILE A MOTION FOR CONTINUANCE DURING TRIAL.

IN GENERAL, THE PROPER PROCEDURE WHEN ALLEGING SURPRISE DUE TO VIOLATION OF THE TRIAL COURT'S ORDERS FOR DISCOVERY IS TO REQUEST A CONTINUANCE. IN SANDERS V. STATE, NO. 05-12-01186-CR, 2014 TEX. APP. LEXIS 4430 (TEX. APP. DALLAS, APRIL 23, 2014, PET. FILED), THIS COURT HELD "IF A WITNESS'S NAME IS NOT FURNISHED TO A DEFENDANT BEFORE TRIAL DESPITE A COURT ORDER, ANY ERROR IN ALLOWING THE WITNESS TO TESTIFY OVER A CLAIM OF LACK OF NOTICE IS WAIVED BY THE FAILURE TO MOVE FOR A CONTINUANCE. SANDERS, ID AT *8, CITING BARNES V. STATE, 876 SW.2D 316, 328 (TEX. CRIM. APP. 1994) AND LINDLEY V. STATE, 635 SW.2D 541, 544 (TEX. CRIM. APP. 1982)

HOWEVER, JUST LIKE THE ISSUE IN THIS CASE, SANDERS INVOLVED DISCOVERY PERTAINING TO EXPERTS OR DOCUMENTS FROM WHICH EXPERTS TESTIFY, AND THE STATE'S FAILURE TO DISCLOSE THIS DISCOVERY TO THE DEFENSE. SANDERS, I.D. AT *7-8. THE CASES THIS COURT CITED IN SANDERS EITHER DO NOT IMPLICATE EXPERTS OR DEAL WITH UNRELATED ISSUES REGARDING EXPERTS. FOR INSTANCE, DUFF-SMITH V. STATE INVOLVED DISCOVERY PERTAINING TO DISCLOSURE OF A NOTE HANDWRITTEN BY A LAY WITNESS. 685 S.W.2D AT 30, 33. THIS HOLDING DOES NOT DEAL WITH TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 39.14(B) AND THE TRIAL COURTS PRETRIAL COURT ORDER. SEE TEX. CODE CRIM. PROC. ARTICLE 39.14(B)(2013) (20-DAY NOTICE REQUIREMENT OF EXPERTS).

NEXT, TAMEZ V. STATE DEALT WITH AN ISSUE REGARDING WHETHER

ARTICLE 39.14 (B) WAS "SELF-EXECUTING," IE, WHETHER ABSENT A TIMELY REQUEST BY THE DEFENSE, IS THE STATE IS REQUIRED TO DISCLOSE THE NAMES OF EXPERTS. 205 SW 3D AT 39-40. THE TWELFTH COURT OF APPEALS FOUND THAT ARTICLE 39.14 (B) IS NOT "SELF-EXECUTING," AND THE DEFENSE MUST FILE & SERVE A TIMELY REQUEST. ID. THIS HOLDING DOES NOT DEAL WITH THE PRETRIAL COURT ORDER, AS THE TRIAL COURT ORDERED THE STATE TO TENDER ALL EXPERT-RELATED DISCOVERY TO APPELLANT'S COUNSEL OVER FOUR MONTHS PRIOR TO TRIAL COMMENCING.

AND BARNES V. STATE DEALT WITH THE STATE'S FAILURE TO PROVIDE NAMES OF WITNESSES WHO TESTIFIED DURING THE PUNISHMENT PHASE OF THE TRIAL. 876 S.W.2D AT 328. DISCLOSING PUNISHMENT WITNESSES AND EVIDENCE FALLS UNDER A DIFFERENT RULE [SEE TEX. RULE EVID. 404(B) (2014)], AND DOES NOT DEAL WITH ARTICLE 39.14(B) AND THE PRETRIAL COURT ORDER.

FINALLY, LINDLEY V. STATE INVOLVED THE STATE FAILING TO DISCLOSE THAT IT INTENDED TO PRODUCE AN ARRESTING OFFICER TO TESTIFY REGARDING INCULPATORY STATEMENTS THE DEFENDANT MADE TO THE ARRESTING OFFICER. 635 SW 2D AT 544. THIS ALSO DOES NOT DEAL WITH ARTICLE 39.14(B) AND THE PRETRIAL COURT ORDER. IN FACT, THE FACTS OF LINDLEY CAN HARDLY BE CONSIDERED "SURPRISE" SINCE IT WAS THE DEFENDANT WHO MADE THE STATEMENTS THAT CONSTITUTED THE "SURPRISE."

APPELLANT ASKS THIS COURT TO HOLD THAT EXPERT TESTIMONY OR EVIDENCE WILLFULLY WITHHELD FROM DISCLOSURE IN VIOLATION OF A DISCOVERY ORDER SHOULD BE EXCLUDED FROM EVIDENCE. SEE OPREAN V. STATE, 201 SW 3D 724, 726 (TEX. CRIM. APP. 2006) CITING HOLLOWELL V. STATE, 571 SW 2D 179, 180 (TEX. CRIM. APP. 1978). OTHERWISE, IF THE STATE CONTINUES TO FLAUNT THE RULES AND THEN PROVIDE NONSENSICAL OR UNCLEAR REASONS FOR FAILURE TO ABIDE BY THE RULES SUCH AS THE REASONS IT GAVE FOR : (1) NOT HAVING THOMPSON LISTED AS AN EXPERT WITNESS PRIOR TO TRIAL (2) NOT TURNING OVER EXPERT DOCUMENTS UNTIL EIGHT DAYS AFTER TRIAL BEGAN (3) NOT TURNING OVER EXPERT DOCUMENTS UNTIL EIGHT DAYS AFTER IT RECEIVED THE DOCUMENTS. AND (4) NOT TURNING OVER EXPERT DOCUMENTS UNTIL THE MORNING OF ITS EXPERT'S TESTIMONY, THEN RULES OF PROCEDURE ARE POINTLESS.

APPELLANT FURTHER ARGUES THAT EXPERT WITNESSES ARE DIFFERENT TYPES OF WITNESSES THAN LAY WITNESSES. FIRST, EXPERT WITNESSES ARE EXEMPTED FROM WITNESS RULE PROVIDED THE PROPONENT OF THE EXPERT SHOWS THE EXPERT'S PRESENCE IS SHOWN TO BE ESSENTIAL TO THE PRESENTATION OF THE PROPONENT'S CASE. SEE TEX. RULE EVID. 614(3) 2014; MOORE V. STATE, 493 SW 2D 844, 845 (TEX. CRIM. APP. 1973); HERNANDEZ V. STATE, 791 S.W 2D 301, 306 (TEX. APP. CORPUS CHRISTI 1990, PET. REF.); HENDLEY V. STATE, 783 S.W. 2D 750, 752 (TEX. APP. HOUSTON [1ST DIST] 1990); BARNHILL V. STATE, 779 S.W. 2D 890, 892-893 (TEX. APP. CORPUS CHRISTI 1990). NO SIMILIAR PROVISION EXISTS FOR OTHER PERSONS OTHER THAN THE PARTIES, OFFICERS OR EMPLOYEES OF A CORPORATION, OR THE "VICTIM" IN A CRIMINAL CASE IN CERTAIN CIRCUMSTANCES; TEX. RULE EVID. 614 (2014)

SECOND, DUE TO THE NATURE OF EXPERT WITNESSES, A DEFENDANT MUST HAVE PROPER NOTICE OF THE STATE'S USE OF AN EXPERT SO THAT THE DEFENDANT CAN BE PREPARED FOR TRIAL AS IS THE DEFENDANT'S RIGHT UNDER THE 5TH AND 6TH AMENDMENTS. IT IS WELL KNOWN TO THIS COURT HOW AN EXPERT WITNESS'S TESTIMONY MAY AID THE DEFENSE AT TRIAL. EXPERTS MAY SUPPORT AN AFFIRMATIVE DEFENSIVE THEORY OF THE CASE. AN EXPERT MAY BE USED TO COUNTER LAY TESTIMONY ABOUT VARIOUS MATTERS. AN EXPERT IS OFTEN USED TO COUNTER THE PROSECUTION'S USE OF EXPERT TESTIMONY. THE MOST COMMON REASON FOR A DEFENSE EXPERT IS TO REBUT THE OPINION OFFERED BY THE STATE'S EXPERT, WHICH IN THIS CASE WAS THOMPSON. SUCH USE OF AN EXPERT INVOLVES AN CRITIQUE OF THE DATA ON WHICH THE OPINION OF THE STATE EXPERT IS BASED, WHICH IN THIS CASE ARE THE METRO PCS DOCUMENTS THAT THOMPSON RELIED UPON TO PROVIDE HIS OPINION. THIS DEFENSIVE MEASURE WILL ONLY SUCCEED IF TRIAL COUNSEL IS SUCCESSFUL IN PRESENTING THE DEFENSE EXPERT AS BEING MORE QUALIFIED THAN THE STATE'S EXPERT TO DRAW A CORRECT CONCLUSION FROM THE EVIDENCE. APPELLANT SHOULD HAVE HAD PROPER NOTICE OF THE STATE'S INTENT TO USE THOMPSON AS AN EXPERT AND SHOULD HAVE AT LEAST RECEIVED THE DOCUMENTS THAT THOMPSON RELIED UPON ON OCTOBER 7.

ACCORDING TO THE PROSECUTOR, THE EXPERT WOULD TESTIFY BASED ON HIS INDEPENDENT KNOWLEDGE BUT MIGHT REFER TO THE LIST (DOCUMENTS)

TO CONFIRM THE LOCATION OF A PARTICULAR CELL TOWER; HOWEVER, THE STATE DID NOT INTEND TO INTRODUCE THE DOCUMENTS. APPELLANT'S COUNSEL ARGUED THAT BECAUSE THEY HAD NOT BEEN GIVEN TIME TO GO THROUGH THE STACK, THEY WOULD BE UNABLE TO VERIFY WHETHER THE EXPERT'S TESTIMONY ABOUT LOCATION WAS ACCURATE. WHEN THE TRIAL COURT ASKED HOW MUCH TIME THEY NEEDED TO REVIEW THE DOCUMENTS, DEFENSE COUNSEL RESPONDED "AT LEAST 45 MINUTES." THOUGH THE TRIAL COURT OVERRULED APPELLANT'S OBJECTION BUT GAVE DEFENSE COUNSEL AN HOUR AND FORTY FIVE MINUTES TO REVIEW THE DOCUMENTS, TIME GIVEN WAS NOT ADEQUATE TO REALISTICALLY REVIEW AND RESEARCH THE STACK OF PAPERWORK, VERIFY THE DOCUMENTS AS BEING ACCURATE AND SUPPLY A PROPER DEFENSE. IT WAS NOT REASONABLE NOR REALISTIC TO EXPECT A DEFENDANT TO LOCATE AND HIRE AN EXPERT TO REBUT THE STATE'S EXPERT WITH SUCH SHORT NOTICE.

ASSUMING THE STATE FAILED TO COMPLY WITH THE TRIAL COURT'S DISCOVERY ORDER, THE APPROPRIATE REMEDY IS TO REQUEST A CONTINUANCE. HERE, COUNSEL OBJECTED REPEATEDLY BUT WAS OVERRULED THUS DENYING THE GROUNDS FOR THE VARIOUS OBJECTIONS -MOVE FOR A CONTINUANCE. AFTER THE RECESS GIVEN, COUNSEL REURGED HIS OBJECTION TO THE DOCUMENTS AS UNTIMELY RECEIVED WHICH CLEARLY DEMONSTRATES AN HOUR AND FORTY FIVE MINUTES WAS NOT ENOUGH TIME TO REVIEW NEWLY PRESENTED DOCUMENTS. APPELLANT DID ALLEGE MISCONDUCT ON THE PART OF THE STATE BY OBJECTING MULTIPLE TIMES.

IT IS THUS OBVIOUS THAT IF APPELLANT WERE TO HAVE ONE OR MORE DEFENSIVE EXPERTS READY TO REBUT THE TESTIMONY OF THE STATE'S EXPERT (THOMPSON), APPELLANT MUST HAVE HAD <u>NOTICE</u> OF THE STATE'S INTENT TO USE AN EXPERT, AND HAVE COPIES OF DOCUMENTS THE EXPERT INTENDS TO REPLY UPON. TO CONCLUDE THAT APPELLANT SHOULD HAVE TO REQUEST A CONTINUANCE BECAUSE THE STATE REFUSED TO FOLLOW THE TRIAL COURT'S PRETRIAL ORDER DOES NOTHING MORE THAN REWARD THE STATE FOR NOT FOLLOWING THE TRIAL COURT'S ORDER. FURTHER, THE TRIAL COURT REPEATEDLY DENIED DEFENSE CONTINUANCES AND MADE IT CLEAR THAT THE TRIAL WAS NOT GOING TO BE DELAYED ANY FURTHER. BASED UPON THE STATE'S EXPLANATION, THIS WAS A CALCULATED MOVE BY THE STATE AND WAS A

FLAGRANT VIOLATION OF THE EXPERT DISCLOSURE RULES; A CLEAR SHOWING OF BIAS. THE RIGHT TO AN IMPARTIAL JUDGE AND A FAIR TRIAL IS FUNDAMENTAL.

AS A RESULT, (1) THE DECISION OF THE COURT OF APPEALS CONFLICTS WITH ANOTHER COURT OF APPEALS' DECISION ON THE SAME ISSUE; (2) THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE OR FEDERAL LAW THAT HAS NOT BEEN, BUT SHOULD BE, SETTLED BY THE COURT OF CRIMINAL APPEALS; (3) THE COURT OF APPEALS HAS DECIDED AN IMPORTANT QUESTION OF STATE OR FEDERAL LAW IN A WAY THAT CONFLICTS WITH THE APPLICABLE DECISIONS OF THE COURT OF CRIMINAL APPEALS AND THE SUPREME COURT OF THE UNITED STATES; (4) THE COURT OF APPEALS MISCONSTRUED A RULE; AND (5) THE JUSTICES OF THE COURT OF APPEALS HAVE DISAGREED ON A MATERIAL QUESTION OF LAW NECESSARY TO THE COURTS DECISION. SEE TEX. RULE APP. PROC. 66.3 (2015) APPELLEE ASKS THIS COURT TO GRANT DISCRETIONARY REVIEW.

## IX. CONCLUSION AND PRAYER

FOR THE REASONS STATED IN THIS PETITION, APPELLEE RESPECTFULLY PRAYS THAT THIS COURT GRANT DISCRETIONARY REVIEW, REVERSE THE JUDGEMENT AND OPINION OF THE FIFTH COURT OF APPEALS AND REMAND CAUSE NO. F-1262863 & F-1300351 FOR A NEW TRIAL.

RESPECTFULLY SUBMITTED,

MORRIS JONES # 1894912
P.O. BOX 9000
HENDERSON, TX 75653
BRADSHAW UNIT
PRO SE

## X. CERTIFICATE OF SERVICE

PETITIONER IS CURRENTLY INCARCERATED FILING PETITION WITH LIMITED RESOURCES. THUS, PETITIONER ASKS THE COURT TO FORWARD A COPY OF THIS DOCUMENT TO THE DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE, APPELLATE DIVISION, 133 N. RIVERFRONT BOULEVARD, DALLAS, TEXAS 75207 BY EMAIL TO MICHAEL.CASILLAS@DALLASCOUNTY.ORG AND TO LISA.SMITH@DALLASCOUNTY.ORG SEE TEX. RULE APP. PROC. 9.5 (2014)

MORRIS JONES #1894912



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-01558-CR
### No. 05-13-01559-CR

**MORRIS JONES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court Cause Nos. F12-62862-J & F13-00351-J

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Francis

Morris Jones appeals his two convictions for aggravated robbery with a deadly weapon in connection with a drug deal that left two people dead and one injured. After finding appellant guilty in each case, the jury set punishment at fifteen years in prison for each offense. In five issues, appellant claims the evidence is insufficient to support his convictions, the trial court erred by denying his motion to sever and abused its discretion by allowing a State's expert witness to testify, and the trial court was not impartial. We affirm.

Appellant was charged with capital murder in the death of Jerrold Morris or Robert Tharps, committed in the course of a conspiracy with his brother, John Jones, and Alton Beasley to rob Jerrold Morris or Robert Tharps. The jury acquitted appellant of capital murder and found him guilty of the lesser included offense of aggravated robbery of Morris or Tharps, acting as a

party with Beasley. Appellant was also charged and convicted of the aggravated robbery of Tristan Cherry, acting as a party with Beasley in the commission of the offense. In both charges, the jury was instructed on the law of parties and accomplice witness testimony.

In his first and second issues, appellant claims the evidence is legally insufficient to support his convictions. Specifically, he argues the State failed to prove appellant acted as a party during the commission of the offenses and there is no evidence to corroborate the accomplice witness testimony.

When reviewing a challenge to the sufficiency of the evidence, we examine the evidence in the light most favorable to the jury's verdict to determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard accounts for the factfinder's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When analyzing the sufficiency of the evidence, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* Direct and circumstantial evidence are treated equally. *Id.*

A person commits robbery if, in the course of committing theft and with the intent to obtain or maintain control of property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02 (West 2011). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of property; appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(a), (b)(1) (West Supp. 2014). A person commits aggravated robbery if he causes serious bodily injury to another or uses or exhibits a deadly weapon during the course of robbery. *Id.* § 29.03(a).

–2–

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. *Id.* § 7.01(a). A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). The evidence must show that, at the time of the offense, the parties were acting together, each performing some role in the execution of the common purpose. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex. Crim. App. 1986). When determining whether appellant participated as a party, we may look to events occurring before, during, and after the commission of the offense, and may rely on appellant's actions which show an understanding and common design to do the prohibited act. *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000); *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). To support a conviction based on the testimony of an accomplice, there must be corroborating evidence that tends to connect appellant with the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Corroboration is not sufficient if it merely shows the offense was committed. *Id.* In making our review, we eliminate all of the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect appellant with the commission of the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). The corroborating evidence need not be sufficient by itself to establish guilt. *Id.* It may confirm a "mere detail" rather than the elements of the offense. *Lee v. State*, 29 S.W.3d 570, 577 (Tex. App.—Dallas 2000, no pet.). We look at the particular facts and circumstances of each case and consider the combined force of all the nonaccomplice evidence that tends to connect the accused to the offense. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). The "tends to connect"

standard is not a high threshold. *Randall v. State*, 218 S.W.3d 884, 886 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

The State's theory at trial was that Cherry and Tharps met with Morris in Dallas to buy two kilos of cocaine. They were put in contact with appellant via an intermediary, Jason Pogue, known as J.P. and "Tony Paper." Although appellant told J.P. that his brother, Jones, had the cocaine or could get it, the State argued appellant and his brother never intended to sell the three men any drugs; rather, the brothers planned to "hit a lick" or rob the buyers of the nearly $53,000 cash they had. In order to do so, Jones spoke and texted with Alton Beasley, a seventeen-year-old "friend," who was asked to commit the robbery. Jones told Beasley that if things went wrong, Beasley was to "pop" them but he was not to harm J.P. Appellant gave J.P. the address where the buyers were to pick up the drugs and, when they arrived, Beasley was waiting. He let everyone in the house, then bolted the door shut. When one of the buyers asked to see the drugs, Beasley walked in the kitchen and came out shooting. He killed Tharps and Morris and injured Cherry.

In contrast, appellant argued this was simply a drug deal gone wrong. Although appellant and his brother put together the drug deal, appellant claimed Beasley, who was "hot-headed crazy," acted alone when he shot the buyers.

In support of its theory of the case, the State presented nineteen witnesses and over 360 exhibits over a nine-day period. Cherry, who was eight years older than his brother, said he and Tharps had known Morris since elementary school. The two brothers drove from Oklahoma to Dallas and met Morris at his shop on West Illinois Avenue around eleven in the morning. After they arrived, it appeared that Tharps's regular Dallas contact fell through and "they had to start calling somebody else," doing "something different from what they were expecting to do." Shortly after lunch, J.P. showed up. According to Cherry, J.P. did not make a good impression;

he did not "look like the guy if you're trying to score what they're trying to score" which was two kilos of cocaine.

J.P. and Morris talked and, according to Cherry, J.P. was "gonna call Sleep . . . or somebody like that." "Sleep" was later identified as appellant. J.P. said they could get one kilo but the second one was harder to get. After several calls, J.P. said they got an "SA" or "Mexican" who would get the second kilo for them. He put his phone on speaker, and the caller asked "is the paperwork in order" which Cherry assumed was his way of asking if Tharps and Morris had the money for the two kilos. Even though the caller was told the money was there, he called several more times and repeatedly asked if the "paperwork" was in order; this made Cherry suspicious. After several hours, Cherry and the others were told "Sleepy's little brother" would meet them at a house with the drugs. All four men got in Morris's Range Rover and started driving. When Cherry asked where they were going, he was told they were waiting on a phone call for an address. The call came, and J.P. was given the address of 307 Annarose Drive.

Morris drove the Range Rover to Annarose and pulled up on the street parallel to the house. He and J.P. got out, went to the door, and looked inside. They returned to the car and said everything was fine. Morris pulled in the driveway, and he and Tharps got out and left the vehicle running. After they went in the house, Tharps came to the door and motioned to Cherry to come inside. Cherry saw a young man, later identified as Beasley, holding a gun and standing behind Tharps. Cherry told J.P. to turn off the car, and the two went in the house.

The house was dark inside. Tharps and Morris were already sitting down so Cherry sat on the sofa. Beasley, who had a "hands free" device attached to his ear, walked to the front door and secured it with a two-by-four. Cherry assumed he was talking to someone because the device was blinking. Beasley walked briefly into the kitchen, returned, and opened fire. He shot Tharps twice. He then shot at the sofa, hitting Cherry in the foot. J.P. ran to the door, removed

—5—

the two-by-four, and ran out. Beasley shot Cherry in the thigh and asked, "[W]here's the money?" He shot Cherry three more times before Cherry managed to kick the gun from Beasley's hand and into Morris's lap; Morris and Beasley began fighting over the gun. Because of his injuries, Cherry could not walk so he crawled to the door, rolled down the steps, and hid in the bushes on the side of the house. He heard a car door slam, and when he looked, he saw a blue Cadillac "SUV-type" vehicle with dark tinted windows driving away.

Police arrived a short time later. Initially, they thought Cherry was the shooter but they soon realized he had been shot and was seriously injured. In fact, when Beasley shot Cherry in the arm, it snapped his ulna. The shot to his foot broke three toes, and the shot to his thigh broke his femur. Another shot hit his stomach and sent shrapnel in his pelvis and back. Despite these injuries, Cherry was able to talk to police at the hospital and identify Beasley from a photograph as the shooter.

J.P. told the jury that he and Morris were good friends. When Morris contacted him about buying two kilos of cocaine, J.P. texted appellant, who also went by "Sleep" or "Big Shot," to see if he had access to that quantity. Appellant said his brother, Jones, had it or could get it. On June 3, J.P. went to Morris's office and met with Morris, Tharps, and Cherry. While J.P. was there, appellant texted J.P. "everything in motion, waiting on SA with the other one." Appellant texted J.P. and asked "[h]ow much u tellm" for the cocaine. J.P. replied "53" meaning $53,000; appellant and J.P. were each to get $1000, Jones would get $48,000 because he was supplying the drugs, and Morris, also known as "Big Homie," would get $3000. Appellant texted back, asking if J.P. saw the "paper W" meaning the money, and J.P. responded he had. Appellant referred to "bro" throughout the texting, which J.P. assumed meant appellant's brother, Jones. Because the deal was taking longer than normal, J.P. assured the others that appellant "is my everyday dude" and that he did not think appellant would "try to cross me."

–6–

Appellant finally called and gave the address where the drugs were being delivered. Although he initially said his brother would be there, appellant later called and said the "SA" was going to have his worker there to do the deal. When the four men arrived at the house, J.P. got out and knocked on the door. A voice told him to drive around back. He got back in the Range Rover but before they went anywhere, Beasley opened the door and flagged them into the driveway. Morris parked the car but left it running, and he and Tharps went inside. Beasley waved at J.P. and Cherry to come in, so J.P. turned off the car, and the two men went in the house. Beasley, who secured the door with a two-by-four bolt, was on the phone with somebody and asked if they had the money. J.P. responded, "Hell yeah, we got the money. Where the dope at?" Beasley told the person he was talking to "they wanna know where the stuff at," and walked into the kitchen. J.P. thought about telling Morris to get his gun out because something "just didn't feel too right," but he did not. When Beasley came out, he "went off . . . [and] started shooting." J.P. dove behind the refrigerator, losing his cell phone and eyeglasses. Although he could not see well, he saw Cherry headed toward the front door, so J.P. removed the two-by-four, opened the door, and ran out. He went to a nearby store and tried to call appellant but it went straight to voice mail. He finally contacted a family member to come get him. When asked why he did not call police, he replied, "Look at my record." Using someone else's phone, J.P. called appellant and told him to come over; appellant drove to J.P.'s brother's house in a blue Cadillac CTS. During their conversation, J.P. accused appellant of trying to have him killed, but appellant denied it.

Beasley testified that Jones called him on June 2 and "said he got a play for out-of-town people" from Oklahoma. Beasley explained that "a play" meant a robbery. The following day, Jones picked Beasley up in his white Chevy Malibu to drive him to the house on Annarose. The two men discussed how to pull off the robbery; Jones suggested they use fake drugs, but Beasley

disagreed. On the way to Annarose, they stopped at a gas station where Jones called J.P.; Beasley took the phone from Jones and asked J.P. if the money was good and whether everything was ready. Beasley checked his gun and decided he needed another one. They detoured to a different location where Jones got a .45-caliber gun. Jones told Beasley, "If anything goes wrong, pop 'em," which Beasley understood to mean for him to shoot them; but Jones specifically told Beasley "don't mess with [J.P.], because he's a partner." Beasley said the money was going to be split evenly between Jones, appellant, and Beasley, and that Jones would "look out" for J.P., meaning he would give him something. Jones left, and Beasley went in the house and waited.

When the buyers arrived, Beasley told them to pull in the driveway. At first, only three people walked in, and Beasley told them to get the fourth person inside. Beasley was on the phone with Jones, telling him the money was good when someone asked where the drugs were. Beasley walked in the kitchen as though he was going for the drugs, but when he came out, he began shooting, first to the right side, then to the left. He got in "a tussle" over the gun with one of the victims and drew his gun but inadvertently shot himself. Beasley looked around the house for the money but could not find it. He went out front and looked in the Range Rover, opening two of the doors but still could not find the money. He saw Jones driving down the street and got in the car. Seeing Beasley was bleeding, Jones asked what happened and Beasley said, "Shit went wrong." Jones asked if he got the money, and Beasley said no. Jones said, "I gotta get the money," but Beasley told him just to drive off which they did. Beasley returned the .45-caliber gun to Jones. Later, when he got back to his apartment, Beasley realized he had lost his cell phone. Although he claimed he did not "know that [anyone] was gon' die," he subsequently admitted he was trying to kill them and "[n]obody was gonna be spared."

In addition to this testimony, the State presented forensic, DNA, and cell phone evidence. The house was known as a drug house; the windows were boarded up allowing limited access from the outside. The front door had a two-by-four lock set up which could be controlled by anyone inside. A neighbor, Rodney Tatum, said he was home that day and heard the sound of a car. When he looked out of his window, he saw a white Chevy Malibu parked in the back yard with someone inside. A heavyset black male in a white t-shirt was leaning against the door of the drug house.

Detective Kevin Moss of the Crime Scene division helped process the scene. Police recovered a 9-millimeter pistol near Morris's body and a .45-caliber pistol by Tharps's body, each with the safety on, seven cell phones, a pair of eyeglasses, eight .45 shell casings, a bag containing $51,285 in cash under Morris's body, keys, a wallet belonging to Tharps, and a box of .40 caliber hollow point shells. Forensic firearm expert Susan Allen said all eight .45 cartridge cases found at the house were fired from one gun although it was not the .45 caliber pistol recovered by Tharps's body. She analyzed the bullets taken from Morris's body and confirmed they were fired by the same gun that fired the eight cartridges recovered at the scene.

Forensic fingerprint expert Peter Salicco said he analyzed four sets of prints lifted from the Annarose crime scene. He identified the prints from a pair of eyeglasses found behind a chair in the living room and from the exterior front passenger door of the Range Rover as belonging to J.P. Two prints found on the back exterior right passenger side belonged to Beasley. Blood found in Jones's white Chevy Malibu matched Beasley's DNA profile.

Cell phone records for appellant, J.P., Jones, and Beasley were introduced, and Randall Thompson, custodian of the records, interpreted the data. Each record showed the originating phone number, the subscriber name, the destination phone number, whether the call was answered, the duration of the call, and whether a three-way call was placed. Cell tower data

allowed Thompson to determine the approximate location of each originating call at any given time. This provided police with a visual mapping of the phone conversations, both verbal and textual, between appellant, J.P., Jones, and Beasley on the day of the shooting, as well as a general physical location of each phone user. The cell tower records confirmed Morris, Tharps, Cherry, and J.P. were at 2250 West Illinois and later moved to the area of 307 Annarose. They also confirmed that Jones was in the area of his home, moved to the area near Beasley's apartment, and then moved to the area near 307 Annarose just before the shootings.

Dale Lundberg, senior corporal of Dallas Police Homicide Unit at the time of the offenses, spoke with Cherry who told him about J.P., "Sleep," and Sleep's brother. Cherry said J.P. made a "flurry of calls" to the man known as Sleep during the afternoon. Lundberg then interviewed J.P., who confirmed Sleep was appellant and that he was talking or texting with appellant during the afternoon of the shooting, including at least one call right before the shooting. Lundberg reviewed J.P.'s phone records which confirmed the many calls between J.P. and appellant. On the day of the shooting, appellant texted J.P. that "The $$ gon come bcz we got a great gameplan" and later asked if the buyers had the money, how much money was involved, and whether J.P. had actually seen the money. Appellant also texted the 307 Annarose address to J.P. Police identified one of the seven cell phones found at the crime scene as belonging to J.P.; the cell records show that after the shooting, J.P. did not make any calls on that phone.

Lundberg interviewed appellant's brother, Jones, and examined his phone records and text messages as well. Jones made numerous calls to Beasley and appellant on the day of the shooting. The records showed Jones and Beasley were in the same cell phone tower area at 4:26 but that they had no phone contact from 4:26 until about 5:00; Lundberg believed this confirmed Beasley's statement that Jones picked him up and dropped him off at 307 Annarose. Lundberg

then obtained the phone records for appellant's phone number and examined the series of calls and texts made just before the time of the murders. In particular, Lundberg saw a text with "307 Annarose" sent shortly before the shooting from Jones's cell phone to appellant's phone. Phone records showed appellant was on the phone with J.P. when the text was sent. At 4:56, Jones texted his brother to ask "what Tony Paper got on." Appellant responded he did not know, then gave a physical description of J.P., including that he wore glasses. About a minute later, appellant texted "gon have a hat on think Lacoste shirt" and "make sure he don't fuck witm bro." Jones texted back, "I gotcha, he ain't gon touch him."

Although the jury was instructed on capital murder, the charge also alleged Beasley, intentionally, knowingly, or recklessly, caused bodily injury to Morris or Tharps by shooting either with a firearm while in the course of committing theft of property and with intent to obtain or maintain control of said property while using or exhibiting a deadly weapon and that appellant acted with intent to promote or assist the commission of the aggravated robbery of Morris or Tharps by encouraging, soliciting, directing, aiding, or attempting to aid Beasley in the commission of the aggravated robbery. The jury charge included an instruction on law of the parties and on accomplice witness testimony. After hearing this and other evidence, the jury found appellant guilty of the lesser-included offense of aggravated robbery instead of capital murder in the deaths of Tharps and Morris and the aggravated robbery of Cherry.

We first address appellant's complaint that the evidence is insufficient to support his convictions because there is no corroboration of Beasley's testimony. When making our review, we eliminate all of Beasley's testimony and then examine the remaining portions of the record to see if there is any evidence that tends to connect appellant with the commission of the offenses. *See Castillo*, 221 S.W.3d at 691. The record shows the following corroboration evidence was adduced at trial. When Tharps's regular contact did not come through, Morris contacted

−11−

someone about buying two kilos of cocaine. In response, J.P. showed up at Morris's office and contacted appellant who said his brother could get the first kilo but they would have to contact someone else for the second kilo. J.P. texted and spoke with appellant throughout the afternoon. Appellant's brother, Jones, was also texting and speaking with appellant during that same time frame. Appellant told J.P. that Jones would meet them at the house to do the deal, giving him the 307 Annarose address. Appellant then called back and said Jones would not be there but the SA's associate would be. A neighbor saw a car matching the description of Jones's white Chevy Malibu directly behind 307 Annarose before the shooting. Appellant and Jones texted about what J.P. was wearing, and appellant cautioned Jones to make sure J.P. was not injured. Jones replied "he aint gon touch him." According to J.P. and Cherry, when they showed up at 307 Annarose, Beasley was waiting. He made sure everyone was in the house, then barricaded the door. Beasley had a wireless device in his ear and appeared to be talking to someone. When the buyers wanted to know where the drugs were, Beasley walked in the kitchen as though he was getting the drugs. When he came out, he started shooting, killing Tharps and Morris and seriously injuring Cherry. After the shooting, Jones was driving down Annarose Drive and picked up Beasley, who was bleeding, and drove him home. Having reviewed the non-accomplice testimony regarding circumstances before, during, and after the shootings and the physical evidence, we conclude the non-accomplice evidence tends to connect appellant with the offenses.

Furthermore, contrary to appellant's contention, the non-accomplice evidence along with the other detailed evidence supports his conviction as a party. Although neither Jones nor appellant testified, the evidence shows appellant and his brother were known for setting up drug deals. According to J.P., when he contacted appellant about the drugs, appellant said his brother had them or could get them. Appellant also told J.P. big money was going to come because "we

–12–

got a great gameplan." Appellant, Jones, Beasley and J.P. were in contact with each other throughout the afternoon. Appellant led the buyers to believe there would be two kilos of cocaine for purchase that afternoon and that his brother would be at the location with the drugs. Appellant repeatedly asked J.P. about the money; J.P. confirmed the deal was for $53,000, and he had seen the money. Appellant sent the buyers to the 307 Annarose location where Jones had dropped off Beasley with instructions to "play [the] out-of-town people" from Oklahoma. Jones supplied Beasley with a gun and told him if anything went wrong to "pop 'em." When appellant told Jones that Beasley was not to mess with J.P., Jones asked what J.P. was wearing that day, and in turn, told Beasley that J.P. was not to be harmed because he was "a partner." After the shooting, Beasley looked for the money but could not find it; he searched in the Range Rover, leaving his fingerprints on the backseat door. When Jones picked him up after the shooting and asked about the money, Beasley told him he could not find it. Jones said he had to have the money but then left the area when Beasley told him to leave. Police found the money under Morris's body. This evidence is sufficient to show appellant was criminally responsible for the aggravated robberies of Cherry and Morris or Tharp. Appellant's actions show he directed, aided, or attempted to aid Beasley and Jones in the commission of the offenses and the jury could rely on those actions to infer an understanding and common design to commit the aggravated robberies of Cherry and of Morris or Tharp. After reviewing all the evidence, we conclude any rational trier of fact could have found the appellant guilty as a party beyond a reasonable doubt. We overrule appellant's first and second issues.

In his third issue, appellant contends the trial court erred by denying his motion to sever his cases from those of his codefendant Jones.

We review a trial court's ruling on a motion to sever under an abuse of discretion standard. *Garza v. State*, 622 S.W.2d 85, 91 (Tex. Crim. App. [Panel Op.] 1980) (op. on reh'g).

Article 36.09 of the code of criminal procedure provides that two or more defendants may be tried jointly unless "upon timely motion to sever, and evidence introduced thereon," the defendant shows a joint trial would be prejudicial. TEX. CODE CRIM. PROC. ANN. art. 36.09 (West 2007). A motion to sever based on unfair prejudice is timely if it is made at the first opportunity or as soon as the unfair prejudice becomes apparent. *See Aguilar v. State*, 26 S.W.3d 901, 910 (Tex. Crim. App. 2000). The proponent for severance bears a heavy burden and must show clear prejudice. *See Peterson v. State*, 961 S.W.2d 308, 310 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). A defendant who does not present evidence on his motion to sever fails to properly preserve that error. *See Mulder v. State*, 707 S.W.2d 908, 915 (Tex. Crim. App. 1986).

Here, although appellant filed a timely motion to sever, he did not present evidence at the pretrial hearing to show how he would be prejudiced by a joint trial. Because the "mere allegation" that prejudice may result is not a sufficient showing of prejudice under article 36.09, we cannot conclude the trial court abused its discretion by denying his motion to sever. *See id.*; *see also Sanne v. State*, 609 S.W.2d 762, 776 (Tex. Crim. App. 1980) ("The failure to present evidence in support of the motion [for severance] is reason enough to sustain the trial court's action."). We overrule appellant's third issue.

In his fourth issue, appellant contends the trial court abused its discretion by allowing the State's expert witness Thompson to testify about documents tendered to appellant several days after trial began. Appellant claims the State failed to comply with the trial court's discovery order and, as a result, Thompson should not have been able to rely on the documents or testify about them.

When determining whether a trial court erred by admitting evidence, the standard of review is abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

—14—

Because trial courts are in the best position to decide questions of admissibility, appellate courts uphold a trial court's admissibility decision when that decision is within the zone of reasonable disagreement. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007).

During the seventh day of trial, appellant's counsel requested a hearing outside the jury's presence to challenge the admission of certain documents, specifically "a list of cell towers and sites where these cell towers are thoughout [sic] Dallas," received that day. Counsel argued the State had failed to provide the large stack of documents before trial as ordered by the trial court and should not be allowed to introduce them or rely on them for any purpose. In response, the prosecutor argued the cell phone records themselves had been turned over previously and the list at issue contained only the location of cell towers in Dallas, which was public information. The State's expert witness, who had been disclosed, was expected to interpret the phone records and give the general locations where the calls or texts had been made. According to the prosecutor, the expert would testify based on his independent knowledge but might refer to the list to confirm the location of a particular cell tower; however, the State did not intend to introduce the documents. Appellant's counsel argued that because they had not been given time to go through the stack, they would be unable to verify whether the expert's testimony about location was accurate. When the trial court asked how much time they needed to review the documents, defense counsel responded "At least 45 minutes." The trial court overruled appellant's objection but gave defense counsel an hour and forty-five minutes to review the documents.

Assuming the State failed to comply with the trial court's discovery order, the appropriate remedy for a discovery violation is to request a continuance. *Duff–Smith v. State*, 685 S.W.2d 26, 33 (Tex. Crim. App. 1985). Here, counsel did not move for a continuance but asked for and was given time to review the documents. After the recess, although he reurged his objection to the documents as untimely received, appellant did not request additional time or contend the time

–15–

given had been inadequate to review the documents. Appellant did not allege misconduct on the part of the State, and the record does not reflect the prosecutor willfully withheld the evidence. Under these circumstances, we cannot conclude appellant was harmed when the trial court overruled his objections and allowed the expert to rely on the documents. We overrule appellant's fourth issue.

In his fifth issue, appellant claims he was denied his right to a neutral and impartial judge when the trial court overruled his objections and allowed Thompson to testify. We first note that appellant provides no citation in his brief to where in the record he made an objection sufficient to preserve this issue for our review. Thus, we question whether he has waived this issue.

Regardless, the record before us here does not reflect partiality of the trial court. *See Brumit v. State*, 206 S.W.3d 639, 644 (Tex. Crim. App. 2006). "Due process requires a neutral and detached hearing body or officer." *Id.* at 645. "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Id.*

Here, appellant objected to the State's evidence. The trial court gave appellant the full amount of time requested to examine the documents; appellant did not request additional time, nor did he move for a continuance. Thus, he was granted all the relief he sought. This record does not establish a clear showing of bias and, as a result, does not overcome the presumption that the trial court's actions were correct. *Id.* We conclude appellant's argument lacks merit and overrule his fifth issue.

We affirm the trial court's judgments.

Do Not Publish
TEX. R. APP. P. 47.2(b)
131558F.U05

/Molly Francis/
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

MORRIS JONES, Appellant

No. 05-13-01558-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F12-62862-J.
Opinion delivered by Justice Francis,
Justices Evans and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 7, 2015.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MORRIS JONES, Appellant

No. 05-13-01559-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 3, Dallas County, Texas
Trial Court Cause No. F13-00351-J.
Opinion delivered by Justice Francis,
Justices Evans and Stoddart participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered April 7, 2015.

NORRIS JONES # 1894912
BRADSHAW UNIT
P.O. Box 9000
HENDERSON, TX 75653

LEGAL MAIL

78711832088

COURT OF CRIMINAL APPEALS
P.O. Box 12308
AUSTIN, TX 78711

LEGAL MAIL

